## 27733. GINN *et al. v.* MORRIS PLAN BANK OF PORTS-MOUTH.

DECIDED DECEMBER 19, 1939.

*Eugene A. Epting,* for plaintiffs.

*Rupert A. Brown,* for defendant.

STEPHENS, P. J.   W. J. Ginn and C. P. Ginn levied an attachment upon an automobile as the property of M. Lovell.   The Morris Plan Bank of Portsmouth, Virginia, interposed a claim thereto, asserting that it was the holder of the legal title to the automobile by virtue of a valid retention-of-title contract between Lovell and it, executed according to the laws of Virginia where the automobile was purchased, and that this contract had been recorded in Georgia within six months after the property was brought into this State.   On the trial of the claim case a verdict was rendered in favor of the plaintiffs in attachment.   The bank moved for a new trial, and to the judgment overruling its motion the plaintiff excepted.   This court reversed the judgment of the trial court holding that the claimant's title to the automobile had priority over the attachment, the claimant's lien having been registered in accordance with the laws of Virginia, the residence of the purchaser, of the seller, and of the assignee of the contract (the claimant), and recorded in Georgia within six months after the property was brought into this State in compliance with the laws of Georgia.   *Morris Plan Bank* v. *Ginn,* 56 *Ga. App.* 681 (193 S. E. 783).

The plaintiffs in attachment then filed an equitable amendment and alleged that the claimant bank had knowledge that they were repairing the automobile as that of the defendant in attachment, in good faith, and without actual knowledge of the title of the claimant and that, having such knowledge, it failed to disclose its title, ratified, authorized, and encouraged the defendant in attachment to have these repairs made and stated that it lent the defendant the money to pay therefor.   The plaintiffs in attachment alleged that this conduct estopped the claimant from asserting its title as against their claim for repairs to the automobile.   This amend-

ment was allowed over objection and the claimant excepted pendente lite. The case came on for trial and a verdict was rendered in favor of the plaintiffs in attachment finding the property subject to the attachment to the extent of the claim for repairs on this particular automobile. A motion for new trial was made by the claimant, and a new trial was granted by the court on the ground that the evidence did not establish an estoppel. There was no exception to the grant of this new trial.

Thereafter the case came on again for trial and on this trial it appeared undisputed from the evidence substantially as follows: That the Morris Plan Bank held a valid retention-of-title contract, covering the property levied on, made between the seller and the purchaser, dated May 22, 1935, which contract was assigned by the seller on that date to the Morris Plan Bank; that this contract and assignment were duly registered in Virginia in accordance with the laws of that State; that the contract was recorded in Clarke County, Georgia, after the levy of the attachment in this case, but within six months after the property was brought into Georgia; that the plaintiffs in attachment have a judgment in the attachment proceedings against the defendant and that $200.70 thereof represents the cost and value of the repairs made by the plaintiffs to the automobile; that the automobile was wrecked near Athens, Georgia, and was taken by the defendant to the garage of the plaintiffs for repairs on February 2, 1936, and one of the plaintiffs talked with Mr. and Mrs. Lovell, the people who claimed to own the automobile, and made an estimate as to the amount necessary to properly repair the automobile, which was $195, and was told by Mr. and Mrs. Lovell to wait until arrangements could be made by them about the money before beginning to make the repairs; that on February 4 Mrs. Lovell wrote to the claimant advising it that the automobile had been wrecked and stating that she was unable to pay for the repairs and requesting the claimant bank to make her a loan to pay therefor, and that on February 12 the claimant bank wrote Mrs. Lovell as follows: "We enclose note for $235. It will be necessary for you to sign and return this note to us before we forward our check for $195 to cover the repairs on your car. As soon as this note is received by us we will forward check in the above amount."

It also appears that after waiting several days Mr. and Mrs.

Lovell returned to the plaintiffs' garage and told them to go ahead with the repairs as they had made arrangements for the money, stating that they would return for the automobile in a few days; that the plaintiffs then repaired the automobile but Mr. and Mrs. Lovell did not return, and the plaintiffs, upon learning that they had left town on February 17, 1936, had an attachment levied on the automobile, and that thereafter, on or about February 24, a Mr. G. O. Tebo went to the plaintiffs' garage with a check payable to "Ginn's Garage" for $195, together with a letter signed by the cashier of the claimant bank addressed to Ginn's Garage as follows: "We hold conditional-sales contract on Plymouth coupé motor No. P. J. 55840, sold to Mrs. M. Lovell. We are informed you have bill against this car in the amount of $195 which represents repairs. We hand you herewith our check in this amount and will thank you to deliver the bearer this car." It appears that Tebo claimed to be a representative of the Morris Plan Bank, but later stated that he was not employed by the bank but was acting as a friend of Mr. Whitehurst, its cashier, and that under these circumstances the plaintiffs refused to accept the check and refused to deliver the car to Tebo, and requested the production of the contract mentioned in the letter, which Tebo agreed to get, but that he failed to return, and on March 2, 1936, the claimant interposed its claim to this automobile.

There was evidence that the plaintiffs refused to accept this check and refused to release the automobile unless the defendant also paid the bill for repairs to the automobile with which the defendant's automobile had collided, and the repairs on which it was claimed the defendant had authorized the plaintiffs to make. There was evidence of the cashier of the claimant bank that sometime during the latter part of February, 1936, he had a conversation with one of the plaintiffs, and advised him that the claimant had never authorized any one to have repairs made to the Lovell automobile, and that it was not responsible in any way for the repairs which had been made but that he told this plaintiff that "without prejudice to the bank and entirely in a spirit of compromise and in order to eliminate the delay and expense incident to becoming involved in litigation, the bank would pay the sum of $195 for the immediate release of the Lovell car," and that this plaintiff stated that he would not accept this sum and would not release the Lovell

car for any sum less than the amount necessary to pay for the repairs to both automobiles.

The evidence showed that on March 2, 1936, the claimant received from Eugene A. Epting, an attorney of Athens, the following letter: "This letter is written by me as attorney for Ginn's Garage, of this city, in response to your request of Mr. C. P. Ginn by telephone yesterday. This car was left with Ginn's Garage by Mr. Lovell on an agreement that Lovell would pay, not only for repairs to it, but also to one owned by C. V. Ray, which was also damaged, Mr. Lovell having admitted liability. The repairs to Lovell's car, which you claim, total $200.70. The repairs to Mr. Ray's car total $158.05. Lovell's car has been attached by Ginn's Garage for the full amount $358.75 and is to be sold on Tuesday, March 3rd, at 10 a. m. We consider Ray and Lovell both responsible for the debt for repairs to Ray's car, and have delivered that car to Mr. Ray with the understanding that if we fail to realize the full amount of the bill from Lovell for any reason Ray is to pay the balance. If you have a valid contract retaining title in accordance with Georgia laws, we will release this car from the lien of this repair bill and attachment upon presentation of that bill of sale for examination, and upon payment in cash, post office or express money order, of the sum of $200.70; and will then look to Ray for the full amount of the repair bill to his car. If, however, you have no such contract we will release this car only on payment of $358.75, plus $7 attachment costs. We do not know, of course, what amount Lovell owes you, but we understand that this contract has probably been running for some time, and presume that his payments have been reasonably met. We realize also that if yours is a retention-title contract you are most likely insured against collision damage, and will be reimbursed in the amount of the repairs made on Lovell's car. Therefore, since this car is worth about $350 or $400, and since you are only interested in protecting your interest, it seems to me that you had best pay the full amount prior to sale on Tuesday. If you will wire us agreeing to do that before the hour of sale above named, 10 a. m., Tuesday, March 3rd, we will postpone the sale. If you will show us a valid contract by the time of sale we will, of course, accept the $200.70, dismiss the attachment, and stop the sale. You understand, I presume, that Mr. Ginn's claim for repairs to Lovell's

car is prior to the bill of sale or contract in any event, but it is possible, though not certain, that the proper contract would be prior to the claim of the other car's repairs. Please advise us before sale time as to what you will do, as we desire to give you a fair opportunity to assert whatever rights you have in the matter."

The evidence was that the insurance on the automobile held by the claimant was for fire and theft only. The cashier of the claimant bank further testified that he called this attorney on the telephone and told him the bank held a valid conditional-sale lien on this automobile which came ahead of any lien for repairs, but that the position of the bank was that it was not in any way liable for the repair bill, not having authorized the repairs to be made; that the attorney stated that the attachment sale would be held on March 3, at 10 a. m., and the bank would have to present this conditional-sale contract and pay the sum of $200.70 before the date and hour fixed for the sale; that the witness told the attorney it would be impossible for the bank to get the funds and the contract to Athens by the following morning, that the bank still maintained its position that its lien was prior to that of the plaintiffs, but that by way of compromise and in order to avoid further expense the bank would pay $195 upon delivery of the Lovell car to the South Carolina State line, and that the attorney refused to accept this offer, and stated that he would proceed with the sale. The court directed a verdict for the claimant, and the plaintiffs excepted.

The claimant's title, under its retention-of-title contract which, as it appears from the evidence, was properly recorded in this State, is superior to any lien which the plaintiffs in attachment may have had upon the car for repairs. This is established as the law of this case in *Morris Plan Bank* v. *Ginn,* 56 *Ga. App.* 681 (193 S. E. 783).

The only other question which presents itself is whether the claimant, Morris Plan Bank, waived the superiority of its lien. The Morris Plan Bank nowhere, by its conduct or otherwise, waived its rights under the retention-of-title contract so as to give the plaintiff any lien upon the automobile for repairs superior to the lien of the bank. Nowhere, by its conduct, either expressly or impliedly, did the Morris Plan Bank, by agreeing to lend to Mrs. Lovell money to pay for the repairs which Mrs. Lovell had con-

tracted, or intended to contract, to have done, waive any rights whatsoever under its retention-of-title contract. The bank merely agreed to lend Mrs. Lovell money, on the car as security, to be paid by her for repairs on the car. The bank merely agreed to increase Mrs. Lovell's indebtedness to it. In all communications from the bank to the plaintiffs, or to the plaintiffs' attorney, the bank expressly disclaimed any waiver or surrender of its rights under the retention-of-title contract. Nowhere does it appear that the bank, in dealing with Mrs. Lovell, evinced any intention to waive its lien or any of its rights under the contract. The bank did not agree with any one to pay for the repairs. All that the bank did was to agree to lend the money to Mrs. Lovell to be used in payment of the repairs. This was unknown to the plaintiffs until after the plaintiffs had begun to make the repairs upon the Lovells' car. In the two Supreme Court cases of *Baron* v. *Ward,* 144 *Ga.* 472 (87 S. E. 396), and *Clark* v. *Havard,* 122 *Ga.* 273 (50 S. E. 108), there were express waivers or renunciations, or express intentions to renounce, by the persons holding the legal title, of all rights, title, and interest in the property. Although the renunciations had not been communicated to the persons who in those cases sought to hold the parties making the renunciations of title, it was nevertheless held that the persons to whom such renunciations of title had not been made and who had no knowledge thereof could nevertheless hold the parties making such renunciations to a waiver or estoppel.

The evidence demanded the verdict for the claimant, and the court did not err in so directing. On rehearing we are of the opinion that the judgment of reversal should be vacated, and that the direction of the verdict for the claimant should be affirmed.

*Judgment affirmed. Sutton, J., concurs.*

FELTON, J., dissenting. Mr. Ginn testified that one of the Lovells told him that he or she had heard from her people about the money for the repairs for the car and instructed him to proceed with the repairs. It is true that the letter from Mrs. Lovell to the bank, after the repairs were made, indicates that she had had no previous communication with the bank, but it is not conclusive on the subject. The evidence of Mr. Ginn was not objected to on the ground that the telegram referred to was the highest and best evidence and the testimony was not objectionable as hearsay.

The jury would have been authorized to find, in the absence of positive testimony that the bank did not wire Mrs. Lovell agreeing to lend her the money for the repairs, that the bank did so wire her. If it did, it consented to the repairs and would be estopped to claim the car without paying for them. *Baron* v. *Ward,* 144 *Ga.* 472 (supra).

All the evidence referred to in the majority opinion as indicating that the bank was disclaiming any intention to waive its lien occurred after the loan was made for the repairs, and after a misunderstanding between the parties about payment and delivery of the car. My opinion is that when the bank agreed to lend the owner the money to make the repairs, even if done after the repairs were made, and took a note for the money, it waived its title as against the repair bill. In addition to these reasons, the bank holds the proceeds of the loan as trustee for the repair men, and can not in equity and good conscience withhold the money and claim the automobile with the repairs thereon; and neither the bank nor the owner can rescind the loan after the claim is filed by the bank. It was unfortunate that the parties had difficulties in reaching a solution of the problems and that the repair men refused payment because of demands which they thought unreasonable; still, these facts do not alter the justice of the case, namely, that each party should be required to live up to its obligations required by both law and conscience.